D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA*
*Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**TIANA BARRETT and TADEA MIKHAIL MILES on behalf of themselves and others similarly situated,**

               **Plaintiff,**

      **v.**

**THE RANGE NYC LLC, d/b/a FIVE IRON GOLF,**
**FIVE IRON GOLF NYC LLC d/b/a FIVE IRON GOLF,**
**FIVE IRON GOLF FIDI LLC,**
**FIVE IRON GOLF FLATIRON LLC,**
**FIVE IRON GOLF FRANCHISING LLC,**
**FIVE IRON GOLF LIC LLC,**
**FIVE IRON GOLF ROCK LLC,**
**FIVE IRON SEAPORT LLC, and**
**FIVE IRON GOLF TRIBECA LLC,**

               **Defendants.**

------------------------------------------------------------x

**CASE NO. 1:26-CV-5004**

**COMPLAINT**

**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

**INTRODUCTION**

1.     The Five Iron Golf venues are high-profile sports and entertainment establishments located throughout New York City. Five Iron Golf markets itself as a premier destination combining dining, nightlife, and interactive entertainment.

2.      Plaintiffs, bartenders at Five Iron Golf, bring this action on behalf of themselves and other service employees who worked at Five Iron Golf and who were integral to delivering the upscale experience Defendants advertised to the public. Despite the venue's public image and premium pricing, Defendants engaged in tip theft and other wage-and-hour violations of federal and New York law.

## JURISDICTION AND VENUE

3.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

5.      Defendant The Range NYC LLC is a New York State limited liability company that owns and operates Five Iron Golf NYC LLC.

6.      Defendants Five Iron Golf NYC LLC d/b/a Five Iron Golf, Five Iron Golf Fidi LLC, FIVE Iron Golf Flatiron LLC, Five Iron Golf Franchising LLC, Five Iron Golf LIC LLC, Five Iron Golf Rock LLC, and Five Iron Golf Tribeca LLC (together with The Range NYC LLC, "Defendants" or "Five Iron") collectively own and operate the Five Iron Golf entertainment venues in New York State (collectively referred to as the "Bars") at the following locations:

   a) 22 Stone St., New York, NY 10004;

b)  138 5th Ave., New York, NY 10011;

c)  101 Park Ave., Floor 3, New York, NY 10017;

d)  883 6th Ave., 3rd Floor, New York, NY 10001;

e)  22-43 Jackson Ave., Long Island City, NY 11101;

f)  1290 6th Ave., New York, NY 10104; and

g)  1681 3rd Ave., New York, NY 10128.

7.      Defendants operate the Bars as a single integrated enterprise under the common control of Defendants. All the Bars are engaged in related activities, share common ownership, and have a common business purpose.

8.      Specifically, Defendant The Range NYC LLC owns Five Iron Golf NYC LLC, and Five Iron Golf NYC LLC owns all the Bars in New York City.

9.      Moreover, all the Bars have a centralized human resources department that manages hiring, firing, and administering their workforces.

10.     For example, Five Iron Golf NYC LLC issues paychecks to employees at multiple Five Iron locations.

11.     Job postings for all Five Iron locations are posted on their common website, www.fiveirongolf.com.

12.     In or around November 2024, this centralized Defendant made the decision to reduce all New York City tipped employees' pay rate to $10.65 per hour.

13.     The Bars also share employees. For example, Plaintiff Barrett rotated between the Park Avenue and 1290 6th Avenue locations.

14.     Similarly, the Bars share management level employees. For example, Lyndon Scott was Plaintiff Barrett's manager at both locations where she worked.

15.     The Five Iron locations also share and utilize similar branding, décor and ambience.

16.     The Range NYC LLC holds the liquor licenses for the Bars at 22 Stone Street and 138 5th Ave.

17.     Five Iron Golf NYC, LLC holds the liquor licenses for the Bars at 101 Park Ave., 883 6th Ave., 22-43 Jackson Ave., and 1681 3rd Ave.

18.     At all relevant times Five Iron's annual gross volume of sales has exceeded $500,000.

19.     Five Iron has employees engaged in interstate commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for interstate commerce.

20.     Plaintiff Tiana Barrett worked for Defendants from April 2024 until November 2024 and again from November 2025 until May 2026.

21.     Plaintiff Tadea M. Miles has worked for Defendants at the Park Ave. location since early 2025.

### FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Plaintiffs bring the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all servers, bartenders, barbacks, runners, and bussers employed by Defendants at Five Iron on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

23.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully retaining their tips and paying the wrong overtime rates.   The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

24.    The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and contact information are readily available from the Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message to the last address, email address, and phone number known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

25.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all servers, bartenders, barbacks, runners, and bussers employed by Defendants on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

26.    All said persons, including Plaintiffs, are referred to herein as the "Class."  The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

27.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) members of the Class.

28.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation, illegal retention of tips, and failure to provide required wage notices/statements. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

32.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)        Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law.

b)        At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work.

c)        Whether Defendants paid Plaintiffs and the Class members the minimum wage for all hours worked.

d)        Whether Defendants paid Plaintiffs and the Class members the proper overtime premiums for hours worked over 40 in a workweek.

d)        Whether Defendants illegally retained Plaintiffs' and the Class Members' tips.

e)        Whether Plaintiffs were manual workers entitled to be paid on a weekly basis.

f)        Whether Defendants paid Plaintiffs and the Class Members New York's "spread of hours" premium when their workdays exceeded 10 hours.

g)        Whether Defendants provided Plaintiffs and Class members with proper wage notices and wage statements.

## **FACTS**

33.        Plaintiffs' Consent to Sue forms are attached as Exhibit A.

34.        Defendants committed the following alleged acts knowingly, intentionally, and willfully.

35.        Defendants paid Plaintiffs an hourly rate that was below the full minimum wage rate by claiming a tip credit against their wages.

36.        For example, in 2024 Defendants paid Plaintiff Barrett $12 an hour when the full minimum wage was $16.  Similarly, in 2025, Defendants paid Plaintiffs $11 an hour when the full minimum wage was $16.50.

37.     Defendants' use of a tip credit was unlawful because they did not always give Plaintiffs the written notice of the tip credit required under New York law.

38.     Defendants were also not permitted to take a tip credit because Plaintiffs spent at least two hours and/or more than 20 percent of their shifts on work for which tips are not customarily received.

39.     By way of example, Plaintiff Miles frequently worked shifts that started at 2 p.m. However, customers at Five Iron typically only started arriving at 5 p.m. or 6 p.m. On those occasions, Plaintiff Miles spent 3 to 4 hours on non-tipped work such as cleaning, preparing and organizing the bar, polishing silverware, and sweeping.

40.     Plaintiff Miles also worked overtime for Defendants. On these occasions, he was not paid the legally required overtime rate.

41.     For example, for the work period ending 12/7/25, Plaintiff Miles was paid for 3.42 hours of overtime at the rate of $19.25 per hour.  However, as discussed above, Defendants were not entitled to pay Plaintiff pursuant to the tip credit minimum wage, and he should have been paid $24.75 per overtime hour, *i.e.*, one and a half times the New York full minimum wage.

42.     Defendants retained Plaintiffs' tips.

43.     For example, in the payroll cycles ending 3/29/26 and 4/12/26, Plaintiff Barrett was only paid an hourly rate and did not receive any tips at all.

44.     Plaintiff Barrett worked as a bartender for her shifts during those payroll cycles, and she saw customers leave tips on the checks they paid.

45.     Defendants also frequently host private events and buyout events.

46.     Defendants charge customers an automatic gratuity and administrative fee on those events. Some customers also leave additional voluntary gratuities at those events.

47.     However, Defendants do not distribute all of the mandatory or voluntary gratuities paid by the customers on these events/buyouts.

48.     For example, Plaintiff Barrett worked at a buyout event at the 1290 6th Avenue location in November 2025. Plaintiff and her co-workers were informed that they would be paid a flat amount of $75 for working that event and that they would not be paid any of the tips at all.

49.     Defendants did not always explain in the materials it provided to customers how and to whom the automatic charges would be disbursed.

50.     Defendants also required Plaintiff and other tipped employees to share tips with line cooks who did not leave the kitchen or serve customers during their shifts.

51.     Defendants never gave Plaintiff a written wage notice that complied with NYLL § 195(1).  Because Defendants did not provide Plaintiff with a written wage notice that included notice of the tip credit, Defendants' use of a tip credit was an underpayment of wages. In other words, Defendants' violation of the New York Labor Law's wage notice requirement resulted in Plaintiff being paid less than he was entitled to.

52.     Defendants did not give Plaintiffs paystubs that identified the tip credit that Defendants were taking against the minimum wage owed Plaintiffs, in violation of New York Law.

53.     As a result of this violation combined with Defendants' failure to give Plaintiffs appropriate notice of the tip credit, Plaintiffs were unaware that they were illegally being paid pursuant to a tip credit and did not pursue full payment until the instant lawsuit.

54.     Plaintiffs were manual workers as defined by New York Labor Law § 191. Specifically, Plaintiffs spent the majority of their work time performing manual work such as standing, walking, carrying items, and cleaning.

10

55.     However, Plaintiffs were and are paid on a biweekly basis instead of weekly, as required by NYLL § 191. Thus, every other week, Defendants denied Plaintiffs money to which they were entitled.

56.     Every time that Defendants failed to pay Plaintiffs their wages earned within seven days of the end of the workweek, Defendants deprived them of the use of money that belonged to them.  As a result, Plaintiffs were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy. Moreover, by retaining money that belonged to Plaintiffs, Plaintiffs lost the time value of money.

57.     Defendants committed the foregoing acts against Plaintiffs, the FLSA Collective Members and the Class Members.

### FIRST CLAIM FOR RELIEF
**(FLSA Tip Misappropriation, 29 U.S.C. § 201, *et seq.*)**
**(Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs)**

58.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

59.     At all relevant times, Defendants have been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

60.     At all relevant times, Defendants employed "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

61.     During the statute of limitations period covered by these claims, Defendants knowingly retained the tips of Plaintiffs and the FLSA Collective Plaintiffs.

62.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid gratuities, liquidated damages as provided by the FLSA,

attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.***
**Brought by Plaintiff Miles on Behalf of Himself and the FLSA Collective Plaintiffs)**

63.    Plaintiff Miles, on behalf of himself and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

64.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

65.    Throughout the statute of limitations period covered by these claims, Plaintiff Miles and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

66.    At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Class members the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

67.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff Miles and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

68.    Plaintiff Miles, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

12

**THIRD CLAIM FOR RELIEF**
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

69.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

70.    Defendants knowingly paid Plaintiffs and the Class members less than the New York State minimum wage for all hours worked.

71.    As a result of Defendant's unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**(New York Overtime Violations,**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4**
**Brought by Plaintiff Miles on Behalf of Himself and the Class)**

72.    Plaintiff Miles, on behalf of himself and the Class members, realleges and incorporates by reference all previous paragraphs.

73.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

74.    Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff Miles and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

75.    As a result of Defendants' willful and unlawful conduct, Plaintiff Miles and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

13

**FIFTH CLAIM FOR RELIEF**
**(Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d)**
**(Brought By Plaintiff on Behalf of Himself and the Class)**

76.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77.    Defendants retained/misappropriated portions of Plaintiff's and Class Members' tips.

78.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**(New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

79.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

80.    Defendants did not provide Plaintiffs and the members of the Class with the notices/statements required by N.Y. Lab. Law § 195.

81.    As a result of Defendant's unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, post-judgment interest, and costs and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**(New York State Late Payment of Wages Violations**
**New York Minimum Wage Act, N.Y. Stat. § 190 et seq.)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

82.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

14

83.     At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the NYLL, § 190, et seq.  At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

84.     Defendants did not pay Plaintiffs—who were manual laborers—on a weekly basis.

85.     Instead, Defendants issued paychecks to Plaintiffs on a bi-weekly basis.

86.     The aforesaid conduct of Defendants was knowing, intentional, and willful.

87.     By their aforesaid conduct, Defendants willfully violated the provisions of the NYLL regarding timely payment of wages, NYLL Art. 6 § 191, et seq.

88.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to recover interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

A.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.     Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

C.     Designation of this action as a class action pursuant to F.R.C.P. 23.

D.     Designation of Plaintiffs as Representatives of the Class.

E.     An award of damages, according to proof, including liquidated damages, to be paid

by Defendant;

F.     Penalties available under applicable laws;

G.     Costs of action incurred herein, including expert fees;

H.     Attorneys' fees, including fees pursuant to 29 U.S.C. §, 216, N.Y. Lab. L. §§ 198,

663, and other applicable statutes;

I.     Pre-judgment and post-judgment interest, as provided by law; and

J.     Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Dated: New York, New York          Respectfully submitted,
      June 12, 2026

JOSEPH & KIRSCHENBAUM LLP


By: /s/ *D. Maimon Kirschenbaum*
    D. Maimon Kirschenbaum
    Josef Nussbaum
    45 Broadway, Suite 320
    New York, NY 10006
    Tel: (212) 688-5640
    Fax: (212) 981-9587


*Attorneys for Named Plaintiff, proposed*
*FLSA Collective Plaintiffs, and proposed*
*Class*


**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to

which they have a right to jury trial.

16